Riker *v.* Hooper.

JOSEPH RIKER *v.* SAMUEL R. HOOPER.

*Pounds. Impounder. Pound-keeper. Judgment. Evidence. Penal Actions. Limitation. Pleading.*

A former judgment in a civil action is not conclusive in a penal action between the same parties, though the same question was litigated in both actions, because the measure of proof is different in the two actions.

In an action by an impounder to recover the penalty prescribed by sec. 10, chap. 92, Comp. Stat., (Gen. Stat. chap. 100, sec. 10,) against the owner of the animal impounded, for not redeeming or replevying the beast, full proof must be made by the plaintiff, as in a criminal action. Therefore, where the question of the legality of the notice of the impounding by the impounder to the owner of the beast was in issue in such a penal action, *held,* that a judgment in favor of the impounder in an action of trover against him by the owner of the animal for illegally impounding it, which involved the sufficiency of such notice, was not admissible even as *prima facie* evidence of the legality of the notice.

When there is not a sufficient pound in a town, one may impound in an inclosure of another person, as well as in his own.

If, in a town where there is not a sufficient pound, one impounds an animal in the barn of the public pound-keeper, and does this because he is pound-keeper, and the latter consents to receive and keep the animal as public pound-keeper, the action for the penalty and the expenses of keeping the animal, provided by sec. 10, ch. 92, Comp. Stat., must be brought by the pound-keeper, and not the impounder.

Such forfeiture does not include the expenses of keeping the animal, while impounded. They are separate and distinct matters, but they may be both recovered in one action.

The claim for such forfeiture is not barred in nine months.

CASE founded upon chapter 92, section 10, of the Compiled Statutes, (General Statutes sec. 10, p. 618,) relating to pounds, &c. The declaration contained two counts. In the first the plaintiff alleged that on the 6th of October, 1857, he found the defendant's horse in his enclosure, in Groton, doing damage, and that he impounded him in the barn of Moses Hatch, in Groton, that town at that time being destitute of a legal and sufficient

pound; that within twenty-four hours after such impounding the plaintiff personally notified the defendant thereof, and of the place where the horse was impounded, but that the defendant had never replevied or redeemed the horse, and that the plaintiff had been compelled to take care of and support the horse, and that thereby an action had accrued to the plaintiff, founded upon the aforesaid section and chapter of the statutes, to recover seventeen cents for each day, viz., four hundred days, the defendant had neglected to replevy or redeem the horse. This count averred a damage to the plaintiff of fifty dollars.

The second count set forth the same facts, and claimed to recover for the food and drink furnished, and the care bestowed upon the horse by the plaintiff, while he remained so impounded. This count averred a damage to the plaintiff of one hundred dollars.

The defendant moved to dismiss the suit,. because the county court had not original.jurisdiction, the whole amount of forfeiture being less than one hundred dollars.

The county court, POLAND, J., presiding, overruled the motion, holding that under the declaration the plaintiff might recover not only the forfeiture, but also the expense of keeping the horse while impounded. To this decision the defendant excepted.

The defendant pleaded the general issue, and the cause was tried by jury at the December Term, 1859, POLAND, J., presiding.

The plaintiff offered evidence tending to show that he had taken the defendant's horse doing damage in his enclosure, on the 6th of October, 1857, and impounded him in the barn of one Moses Hatch, in Groton, and that the defendant neglected to replevy or redeem the horse until October 11th, 1858. In support of the legality of his proceedings in impounding this horse, the plaintiff offered in evidence the record of a judgment in a suit in trover in favor of the defendant against him, for the recovery of damages for conversion of the same horse, which judgment was for the present plaintiff, and also offered evidence to show that the plaintiff in that action insisted and attempted

to show that the notice of impounding was illegal in not stat-.ing where the horse was impounded, which evidence was admitted.

It was proved that the public pound in Groton was insufficient. It also appeared that Moses Hatch was the pound-keeper, duly elected at the previous March meeting of that town, and the plaintiff testified that he impounded the horse with Hatch for the reason that he was pound-keeper. It appeared that the horse was kept by Hatch until the decease of Hatch in April, 1858, and by his executor, who employed one Heath to keep the horse on the same premises of Moses Hatch, from the time of Hatch's decease till he was replevied in October, 1858. It appeared that the plaintiff had never paid any part of the expense of keeping, and had never agreed to pay anything for costs or keeping.

The defendant's testimony tended to show that at the time when the plaintiff pretended to notify him of the impounding of his horse, the defendant asked what was to pay, and the plaintiff said he must pay him the costs, and ten or fifteen dollars dam-ages, and that the defendant said to the plaintiff he was willing to pay the costs, but not the damages ; but that the defendant made no tender or offer to the plaintiff of any money for the costs. It appeared that the plaintiff gave no notice to the defendant to appoint appraisers of damages. The plaintiff told the defendant he could not have his horse unless he paid the damages as well as the costs. This was said at the above inter-view, on the day after the impounding.

The defendant offered to prove that the plaintiff did not give him notice of the place where the horse was impounded, but only notified him that his horse was " in the pound." The court excluded the evidence, and decided that the former judg-ment between these parties, in trover, with the proof that the impounding in question was the same act in question in that case, had conclusively settled the legality of the notice as between these parties. To which decision the defendant excepted.

The defendant offered to prove that directly after being notified by the plaintiff that his horse was in the pound, he went to the

pound for the purpose of redeeming the horse, and searched for him there and elsewhere, but could not find him, which evidence was excluded by the court, to which the defendant excepted.

The defendant insisted that upon the proof, it should be submitted to the jury to find whether the horse was impounded by the plaintiff in the custody of Moses Hatch as pound-keeper, and in his official character, but the court decided otherwise, and held that this fact, if proved, could not affect the plaintiff's right of recovery, to which the plaintiff excepted.

The defendant insisted that the plaintiff being the impounder, could not sustain this action, inasmuch as the action is given by statute to the pound-keeper; also, that after the death of Moses Hatch the plaintiff could not lawfully detain the horse, and by so doing and giving the defendant no notice that the horse was in custody of Hatch's executor, the plaintiff became a trespasser and could not for that reason recover; also, that the plaintiff could not recover at all on this evidence for the expense of keeping, and that in this action the only recovery, if any, must be for the penalty of seventeen cents a day, and that only for such offences as had occurred within nine months of the commencement of the suit, and that no recovery could be had in this suit for costs of keeping; also, that the judgment in the action of trover was not evidence in this case, inasmuch as this was a strictly penal action, which must be sustained by a higher degree of proof. It did not appear that any demand was made upon the defendant for costs of keeping, either by the plaintiff or Moses Hatch, or his executor, before the commencement of this suit; the defendant also insisted that the penalty was in full for all costs of keeping the horse.

The court directed the jury to return a verdict for the plaintiff for the penalty of seventeen cents a day for each day, after forty-eight hours from the time of being notified of the impounding, to the date of service of the writ of replevin, which was the 11th of October, 1858, and a reasonable sum for costs of keeping, together with impounding fees and charges, to which instruction the defendant excepted. Verdict for the plaintiff for one hundred and three dollars.

Riker *v.* Hooper.

*Peck & Colby*, for the defendant.

*C. C. Dewey* and *A. Underwood*, for the plaintiff.

ALDIS, J.    This is a suit to recover a forfeiture, and therefore the rule of evidence in criminal cases applies, that all the facts material to sustain the suit must be proved beyond a reasonable doubt.    One material fact is that the plaintiff gave notice to the defendant of the place where the defendant's horse was impounded, Comp. Stat. chap. 92 sec. 3.    Without such notice the impounding and the detention of the horse were illegal, and the forfeiture and expense of keeping can not be recovered.    To prove this notice, the plaintiff showed that the defendant had sued him in trover for the detention of the horse in the pound ; that on the trial of that case the present defendant contended that the impounding was illegal upon the ground that the notice did not state where the horse was impounded ; that the judgment was for the present plaintiff—and the plaintiff offered the record of that judgment, in connection with proof of the above facts, to show that his proceedings in impounding the horse, and in giving the notice where he was impounded, were legal.    To this the defendant objected, but the evidence was admitted.    The defendant then offered to show that the plaintiff did not give him any notice of where the horse was impounded.    This was objected to by the plaintiff, on the ground that the judgment in trover had conclusively settled the question of the legality of the notice, and that the parol evidence on the part of the defendant was not admissible to show that the notice was not legal.    The court held the record conclusive, and excluded the parole evidence.

The objection to this ruling is not that the very point was not there litigated between the same parties, but that, that action being a civil suit, the jury might have found the fact upon the mere preponderance of evidence, and that they might not have so found if they had been required to have been satisfied of it beyond a reasonable doubt, and therefore that their verdict, resting upon such inferior amount of evidence, ought not to be held conclusive or admissible in this penal action.

Riker *v.* Hooper.

We think the objection stands on solid grounds. All who are conversant with courts must have observed that juries will render verdicts in civil cases upon light evidence—the mere balance of probabilities—when in criminal cases nothing would induce them to so decide. The law justifies them in so doing. The distinction is an important one, and leads to widely different results. To admit the judgment in trover as conclusive here, might operate to deprive the defendant of the right to have the rule of full proof in criminal cases applied to his case. But we do not think it admissible even as *prima facie* evidence of the legality of the notice. For to hold this would be to require the defendant to establish by proof on his own side that the notice was not legal, before the fact had been established on the other side by the requisite legal proof, viz: proof beyond a reasonable doubt; see 1 Greenleaf on Ev. section 537, and cases cited.

II. The statute provides that if there is no pound in a town, any person in such town may impound "in his own barn or in some other enclosure," notifying the owner where his beast is impounded. The defendant contends that the impounder must impound "in his own barn or in some other enclosure" *of his own,* and that the impounding in Moses Hatch's barn was illegal.

This is untenable. The language of the act does not require, but rather excludes the construction. The person wishing to impound might have no other enclosure of his own than the field in which the beast was taken *damage feasant.*

III. Moses Hatch was pound-keeper, and the plaintiff testified he impounded the horse with him because he was pound-keeper; that Hatch had kept the horse, and that the plaintiff had never paid or agreed to pay anything for keeping. He here sues for the expense of keeping, and for the forfeiture incurred by the owner for not replevying or redeeming.

The defendant insisted that he had the right to go to the jury upon the question whether the plaintiff impounded the horse with Hatch as pound-keeper, and in his official character; and claimed that the plaintiff could not sustain the action, which

was given by statute to "the pound-keeper." The court held that though the plaintiff did impound with Hatch "as pound-keeper," still the plaintiff could recover, and directed a verdict for the plaintiff. This must have been upon the basis, that where there is no public pound, the pound-keeper of the private pound is not strictly pound-keeper, but merely agent of the impounder, and he the pound-keeper.

If the impounder had acted himself as pound-keeper, by impounding the beast in his own barn, or if he had procured some other enclosure, and had employed some other person as his servant or agent to keep and feed the beast for him, then he would have been pound-keeper *pro hac vice*, and entitled to recover the expense of the keeping which he had thus incurred or become liable for, and the forfeiture which the law gives as compensation to him who is obliged to keep the animal an unreasonable time. But it appears in this case, that the plaintiff impounded the horse with Hatch (the public pound-keeper elected by the town) because he was pound-keeper, and in his official capacity, and that the plaintiff had never agreed to pay, and never had paid anything for costs or keeping. Without saying that Hatch was bound to receive the horse as pound-keeper, when there was no public pound, yet if he waived that question and did consent to receive and keep him as pound-keeper, we think he must stand upon his rights, and be bound by his duties as pound-keeper, the same as if he had impounded the beast in a public pound. He would not be the servant or agent of the impounder. The impounder would have no greater rights than if he had impounded in the public pound. The owner of the beast would be justified in dealing with the pound-keeper as acting in his official capacity.

Our statutes have altered the common law as to pounds and impounding, in several important particulars.

At common law, animals impounded in the *common* pound were to be fed by their owners, and hence the common pound was always a pound *overt*, having a back wall and yard where the owner might go and feed them without offence. So its oversight was committed to the steward of the leet, "who," it was

said, " should be a barrister of learning and ability." No notice need be given to the owner of the impounding of his beasts in the common pound.

But, by our statute, the pound-keeper elected by the town at March meeting has charge of the pound, is bound to receive animals and keep them, and supply them with food and drink, and the owner · is entitled to notice of the impounding.

At common law, 'if the impounding was not in the common pound, but in a special pound *overt*, the owner was entitled to notice, and then he was to supply food. If the impounding was in a special pound *covert*, (such as a barn or other enclosure, where the owner could not have access to his animals to feed them without offence,) then the impounder was to give notice and feed them at his peril. Our statutes have thrown the duty of supplying the animals with food upon the pound-keeper, and makes him liable to the owner for all damages arising from his neglect of his duty.

As the pound-keeper is thus made by law the passive custodian of the beasts impounded, and must supply their food,—as he can not let them go on one hand, nor redeem or replevy them on the other,—it is obvious, that through neglect of the owner to either redeem or replevy, the animals might be left a long and unreasonable time in the pound, the keeper put to great expense, and the pound in time be overrun by the number of animals impounded.

Hence prompt and summary action is the rule of the impounding law.

The impounder must give notice to the owner within twenty-four hours. The owner must redeem or replevy his animals within forty-eight hours after notice, or forfeit seventeen cents per day for each beast he suffers to remain in pound, " and pay all legal charges to the pound-keeper, which forfeiture " (in the words of the statute) " *shall be recovered by the pound-keeper for his own use, in an action on the case.*"

These provisions of the statute are plainly intended to oblige the owner to act promptly on the question, whether he will con-

Riker *v.* Hooper.

test the lawfulness of impounding by replevying the property, or will yield to it and redeem. Delay on this point might embarrass the pound-keeper, by leaving upon his hands many animals which he ought not to be obliged to keep, and whose increasing numbers might become a burden and nuisance to him. It might involve him, (and the impounder, if liable in the first instance,) in great and needless expense. It is reasonable that the owner, who by replevin can protect all his legal rights, should take and keep his own animals. If he replevy he is not bound to pay the costs and legal charges of impounding, in order to get back his property, but they are taxable against him in the replevin suit, if the impounder recover. See Chap. on Replevin, Comp. Stat. p. 268 sec. 7. If he redeem, he thereby admits the impounding lawful, and must pay the costs, charges and damages ; chap. 92 sec. 3. Such being the rights of the owner, if he neglect to replevy or redeem, he is in the wrong. His neglect increases costs and expenses,—delays the settlement of the wrong complained of, whereas it should be settled while the damage and injury are recent and easily shown, and incumbers the pound with animals that ought to be in their owner's keeping. Thus, if he delays for more than forty-eight hours after notice, he becomes liable to the pound-keeper for the forfeiture and legal charges, and the pound-keeper may sue him therefor at any time. " The legal charges " include the expense of keeping, and he is thus made directly liable therefor to the pound-keeper. The statute in providing that the pound-keeper may recover the refor in his own name, intends that *he* shall bring the action who is entitled to the forfeiture, and thus excludes the impounder, unless he becomes pound-keeper.

In this case, as the evidence tended to show that the impounder did not intend to be the pound-keeper, but on the contrary applied to the pound-keeper, as such, to take and keep the horse, we should be required in order to make him pound-keeper to hold, that in all cases where there is no public pound in a town, the impounder must of necessity be regarded as pound-keeper, and can not by applying to the official pound-keeper relieve himself from the duties of the office. We do not think that this would be con-

30

sistent with the spirit or policy of our statutes. The exclusion of the evidence we deem erroneous.

The defendant also contended that the forfeiture was in full for the costs of keeping.

The language of the statute that " he shall forfeit seventeen cents, &c., *and* pay all legal charges," &c., fairly implies that the legal charges shall be in addition to the forfeiture. The old statute of March 2nd, 1787, from which this is taken, is explicit : " he shall forfeit seventeen cents," &c., " *besides* paying all necessary charges to the pound-keeper, for giving meat and drink to such creatures."

The defendant also claims that in this suit nothing can be recovered but the forfeiture   The right to sue for the expense of keeping arises from the liability of the pound-keeper, as created by statute, hence when the facts requisite by statute to raise the liability exist, the pound-keeper may sue. So, too, of the *forfeiture*—it is created by statute. These rights of action need not be coupled together. Still, where both exist, and the facts which give rise to them are all set forth in the declaration, and both are there claimed as substantive grounds of recovery, (as in this case,) we see no objection to having damages for both included in the verdict. The defendant can not complain if the plaintiff sees fit to include his claim under the statute for the expense of keeping in his penal suit to recover for the forfeiture, and so subject himself to the stricter rule of full proof to sustain his declaration.

The defendant further claimed that all claim for forfeitures prior to nine months before suit brought, were barred by the limitation in section 23 of the statute : " every prosecution for a fine, under the provisions of this chapter, shall be commenced within nine months after the offence is committed, and not after."

But this provision, we think, applies only to fines proper, named in the chapter,—such as fines for rescue, pound-breach, named in the two sections next preceding the 23rd section, and others named in the chapter. Such fines go into the public treasury. The forfeitures named in the act go to the

Riker *v.* Hooper.

party aggrieved, and not to the town. The forfeitures under the 10th section might extend over more than nine months of time, (as they do in this case,) and be continuous in their character, and in substance but one forfeiture. Upon this construction a suit every nine months would be necessary to give the pound-keeper redress.

The offences for which fines *eo nomine* are given, are not continuous, but complete when once committed, and should, if sued for, be promptly prosecuted.

Judgment affirmed, and case remanded.