In the Matter of TITUS B. ELDRIDGE, an Attorney.

An order of the Supreme Court punishing an attorney for professional misconduct, not committed in the presence of the court, but based upon evidence, is reviewable upon the facts in this court.

The distinction between such a case and proceedings for a contempt occurring in the presence of the court, and where the facts are certified by the court pointed out.

Where the alleged misconduct is denied, the affidavits and papers upon which the proceedings were instituted are not evidence upon the issues,

but simply perform the office of pleadings or statements of the charges relied upon. Affidavits are sufficient to originate the proceedings, but upon the trial of the issues the common-law rules of evidence must be observed.

*In re Perry* (36 N. Y. 657) distinguished.

In proceedings for the probate of a will, E., an attorney who appeared as proctor for a contestant, introduced in evidence the deposition of a witness taken on commission; the answers were very full and minute in details, tending to show undue influence; in proceedings to punish E. for alleged professional misconduct in procuring such testimony, it appeared that he prepared and caused to be written out all the answers ·to be given by the witness to the interrogatories and cross-interrogatories; that he was present when the testimony was taken, and himself read to the commissioner the answers he had prepared to the interrogatories, and left with the witness the answers so prepared to the cross-interrogatories which the latter read to the commissioner; that E. paid money to the witness both before and after the taking of the testimony, and he afterward wrote to the witness suggesting a destruction of their correspondence and asking for a return of the memoranda so used at the taking of the deposition. *Held*, that practically the examination was merely an affidavit drawn by E., and in its true character not admissible before the surrogate; that the procuring its reception by disguising it in the form of a deposition was a fraud upon the surrogate; and that, therefore, without regard to the truth or falsity of the answers so given, E. was properly convicted of professional misconduct.

(Argued June 18, 1880; decided September 28, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, suspending the above-named Titus B. Eldridge from his office as attorney and counselor, and forbidding him from practicing law for three years, on account of alleged professional misconduct.

The facts appear sufficiently in the opinion.

*Samuel Hand* for appellant. The affidavits and papers upon which the proceedings were instituted are not evidence upon the issues. Upon the trial of the issues the common-law rules of evidence must be observed. (*People* v. *Cooper*, Ct. App. MS.; 1 Roscoe's Cr. Ev. 773; Benedict's Civil and Crim. Justice, 893; *People* v. *Evans*, 40 N. Y. 1.) Where a defendant has made two distinct statements under oath, one

directly the reverse of the other, it is not enough to produce the one in evidence to prove the other to be false. (Wharton's Am. Crim. Law. § 2275; *Rex* v. *Wheatland,* 6 Carr. & P. 288; *People* v. *Evans,* 40 N. Y. 1.) The fact of the deposition having been written out by the attorney who procured the commission is not, of itself, any evidence to impeach the deposition or show that any "undue means" were employed in obtaining it. (*Commercial Bk.* v. *Union Bk.,* 11 N. Y. 210; 3 Wall. Jr. C. C. 194; *Hunt* v. *Lapin,* 21 Iowa, 484; *Fisk* v. *Funk,* 12 Wis.; *Goodrich* v. *Goodrich,* 44 Ala. 670; 37 Conn. 216; *The "Norway,"* 2 Ben. C. C. 121.) Supporting, with board and lodging, an important poor witness about to leave the State, until his testimony can be taken, or in another city until his deposition can be taken, is not misconduct in a party. (2 R. S. 753, § 13; Laws of 1869, p. 273.)

*Lewis L. Delafield* for respondent. The same principles govern admission to and removal from the bar, and the application of those principles is discretionary. (*Ex parte Robinson,* 19 Wall. 512; *Matter of Beggs,* 67 N. Y. 120; 1 Laws of 1871, chap. 486, p. 1015; *Matter of Kelly,* 59 N. Y. 595; 62 id. 198; 10 Hun, 636; 1 R. S. 403, §§ 98, 97 [6th ed.]; *Matter of Percy,* 36 N. Y. 651; *Bradwell* v. *State,* 16 Wall. 130; *Ex parte Bradley,* 7 id. 365; *Bradley* v. *Fish,* 13 id. 335, 356; *Matter of Cooper,* 22 N. Y. 67.) To sustain an appeal to this court from an order resting on judicial discretion, the power must be shown to have been arbitrarily exercised. (*Forrest* v. *Forrest,* 25 N. Y. 501, 520; *Petition of Reeve,* 34 id. 359; *Candee* v. *Lord,* 2 id. 269; *People* v. *Northern R. R. Co.,* 42 id. 217, 232; *People* v. *N. Y. C. R. R. Co.,* 29 id. 418; *Lawrence* v. *Ely,* 38 id. 42; *Bolles* v. *Duff,* 42 id. 256; *Livermore* v. *Bainbridge,* 56 id. 72; *Cushman* v. *Brundreth,* 50 id. 296.) It is immaterial to the purposes of this inquiry whether Eldredge acted as attorney, or proctor, or counsel for his wife, or not, provided, in the course of the litigation, he was guilty of the acts charged. (*Matter of Kelly,* 62 N. Y. 198; *Bradley* v. *Fisher,* 13 Wall. 335, 355; *Matter of Percy,* 36 N. Y.

653, 654; *Matter of Peterson*, 3 Paige, 512; 1 R. S. 403, § 99 [6th ed., § 25.]; 3 R. S. 449, § 56 [6th ed.]; *Bank of N. Y.* v. *Stryker*, 1 Wheel. Cr. Cas. 330; *U. S.* v. *Porter*, 2 Cranch's C. C. 60; *Perry* v. *State*, 3 Iowa, 550; *Ex parte Brown*, 2 Miss. [1 How.] 303; *Re Percy*, 36 N. Y. 651; *Ex parte Brounsall*, Cowp. 829, cited in note to *Ex parte Stokes*, 1 Chitty, 557; *Waters* v. *Whittemore*, 22 Barb. 595; *Watson* v. *Jordan*, Ca. Pr. C. P. 33; *Troy's Case*, 1 Mod. 5; Merrifield's Law of Attorneys, 121; *Matter of Niles*, 48 How. Pr. 246, 253.) As the court ascertains the character and learning of the candidate for admission to the bar in any way it sees fit without reference to common-law rules of evidence or form, so it will determine the want of these qualifications without reference to such rules. (*In re Percy*, 36 N. Y. 651; *Anonymous*, 8 Hun, 321.) The statute must be strictly complied with in taking testimony on commission. (*Jackson* v. *Hobby*, 20 Johns. 360; *Dwinelle* v. *Howland*, 1 Abb. Pr. 87; *Creamer* v. *Jackson*, 4 id. 413.) A deposition must be suppressed when the witness answers the interrogatories from a written paper prepared by himself and his counsel, and in the counsel's handwriting. (*Creamer* v. *Jackson*, 4 Abb. Pr. 413, 419, 420; *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. 346; *Terry* v. *McNeil*, 58 Barb. 244; *Shaw* v. *Lindsley*, 15 Ves. 380; *Terry* v. *Fisher*, MSS., Dec. 1753, cited in *Shaw* v. *Lindsley*; *Anonymous*, Ambler, 252; 3 Kenyon, 27; 4 Coke's Inst. 278.) If common-law rules did apply, the evidence would be conclusive under the exception that privies in law are bound. (Phillips on Ev. 13; 1 Green on Ev., § 189; 3 Black. Comm. 24, 25.)

FINCH, J. The questions raised on this appeal involve the professional character of a member of the bar, and the propriety of the decision of the General Term which has suspended him from the office, and the duties of an attorney for three years. While the discipline may seem light, it is yet severe, for it is the public and grave conclusion of the court, deliberately spread upon the record, that the appellant has been guilty of conduct unbecoming his profession, and deserving

judicial censure.   The struggle to reverse this determination, and defend the reputation assailed, awakens our sympathy, and demands of us patient care and consideration to prevent even a trace of injustice, while at the same time, our duty to an honorable profession, the need of preserving unsullied that high standard of truth and purity by which alone an officer of justice should be measured, demands of us a cold and deliberate scrutiny, and firmness in declaring its result.   We have, therefore, examined minutely all the voluminous papers submitted on the argument, and considered carefully the able discussion at the bar, and the full and thoroughly prepared briefs of the respective counsel, desiring to omit no labor necessary to a correct conclusion.

A preliminary question needs to be considered.   It is insisted that the order of the General Term is not appealable, because resting in discretion; and that where no legal question is involved, no dispute as to jurisdiction or authority, the conclusion of the Supreme Court upon the facts is final, and not subject to review.   We do not so understand the authorities to which we are referred.   (*Matter of Gale*, 75 N. Y. 526; *Matter of Percy*, 36 id. 651; *Matter of Kelly*, 59 id. 595.)   While in one at least of these cases, language is used susceptible of the interpretation claimed, the fact remains that this court did review upon the merits in at least two of the cases, the action of the Supreme Court, and consider and discuss the proofs upon which that action was founded.   While the measure of punishment consequent upon a conclusion of guilt may fairly be said to be within the discretion of the immediate tribunal, the conclusion itself, the adjudication of guilt or innocence upon the facts, is not so far the subject of discretion as to be beyond review.   The class of orders not reviewable for that reason are substantially those addressed to the favor of the court, to which the applicant has no absolute right, which may or may not be granted without wrong on either hand.   The order in question is not of that character.   The guilt or innocence of this appellant does not rest in the absolute discretion of any court.   An acquittal is his right if upon

the facts he is not shown to be guilty, and we cannot evade or avoid the inquiry. The cases in the Supreme Court of the United States cited as holding the contrary, we think are misapplied. (*Ex parte Bradley*, 7 Wall. 365; *Bradley* v. *Fisher*, 13 id. 336; *Bradwell* v. *The State*, 16 id. 130; *Ex parte Robinson*, 19 id. 511; *Ex parte Burr*, 9 Wheat. 530.) A plain line of distinction is drawn between proceedings for a contempt occurring in the presence of the judge, and the facts constituting which are certified by him, and cases of professional misconduct out of the immediate presence of the court where the actual truth is matter of evidence. In the former class of cases, it is held that the facts embodied in the order of the judge must be taken as true. In the latter the right of review is asserted not only where there had been want of jurisdiction, but also where the court below "had decided erroneously on the testimony." Its discretion is pronounced not unlimited; it must be a " sound discretion ;" and while not to be overruled in cases of doubt, is yet the subject of review.

As we approach the facts of the case at bar another preliminary question is to be considered, raised this time on behalf of the appellant. He insists that the affidavits and papers upon which was founded the order to show cause, and which were transmitted to the referee appointed to determine the issues raised, were not evidence upon those issues, and could have no other proper office or effect than that of pleadings or statements of the charges or accusations relied upon. In reply, the broad doctrine is asserted that these affidavits were evidence, that the common-law rules did not apply to the proceeding, that every thing was admissible, and its effect only the subject of consideration. The language of a previous decision of this court, that "the common-law rules of evidence do not apply to proceedings of this character," was pressed upon our attention. (*In re Percy*, 36 N. Y. 651.) The doctrine in that case was correct to the extent of its application. It related only to the kind and character of evidence presented to the court for the purpose of originating its action. For that purpose affidavits were properly held sufficient, and also the verified minutes of a

trial at the Circuit. And it was only with reference to this preliminary step, the evidence necessary to justify action by the court, that the language cited was used. The opinion in that case goes on to declare that "the court may and ought to cause the charges to be preferred, whenever satisfied from what has occurred in its presence, or from any satisfactory proof that a case exists where the public good and ends of justice call for it. Upon the return of the order the court proceeded *properly* to investigate the charges." The decision, therefore, falls very far short of holding that upon the trial of issues involving professional misconduct, and the right of an attorney to retain his office and its privileges, the common-law rules of evidence may be disregarded. We should be slow to follow such an authority, if it existed. The issue is vital to the party assailed. An adverse decision dooms him always to disgrace, and often to poverty and want. His professional life is full of ·adversaries. Always in front of him there is an antagonist, sometimes angry and occasionally bitter and venomous. His duties are delicate and responsible, and easily subject to misconstruction. To say that when he denies the charges brought against him he may be tried without the rights and the safeguards which belong to the humblest criminal, would be to adopt a dangerous rule, and one without reason or justification. The question is important and it is best that we decide it.

On the application addressed in the first instance to the court, as the mode of arousing its attention and setting it in motion, affidavits, minutes of . testimony, any thing which furnishes needful information, may be used as the basis upon which to found an order to show cause. Upon the return of that order the accused is heard. He may confess, he may explain, he may deny. If he confess, the court may at once render its judgment. If he explain, the court may deem the explanation sufficient, or the reverse. But if he meets accusation with denial, the issue thus raised is to be tried, summarily it is true, by the court itself, or by a referee, but nevertheless to be tried, and on that trial the accused is not to be buried under affidavits or swamped with hearsay, but is entitled to

confront the witnesses, to subject them to cross-examination, and to invoke the protection of wise and settled rules of evidence. In adopting this conclusion we only secure to the members of the bar the common rights and ordinary privileges of the citizen.

It remains to consider whether the evidence adduced before the referee justified the decision which suspended this appellant from the practice of his profession. A portion of the charges against him were very grave. They were nothing less than perjury and subornation of perjury. A will of his wife's father had practically disinherited her. No fault or misconduct of hers explained or palliated the act, and it could only be accounted for by the testator's anger against her husband, or the persistent and paramount influence of the other children and those connected with them. On this latter ground, the appellant, in the name of his wife, and acting at first as her proctor, and all the time as her counsel, resisted the probate of the will. Upon the hearing he introduced in evidence the testimony of three witnesses, Ardies, Wheeler, and Mason, taken out of the State, and by commission. The answers they gave were very minute in their details, and unusually long and full, and tended to show undue influence operating upon the mind of the testator, and producing the result accomplished by the will. At the conclusion of the hearing probate was refused by the surrogate. In his opinion, he gives very slight weight to the evidence taken by commission and rests his conclusion mainly upon the other evidence in the case. Not long after, the defeated parties opened a new attack. They presented to the surrogate a mass of affidavits which in their printed form make a book of 285 pages, tending to show that the evidence taken on commission was false and a fraud upon the surrogate, and that the husband and proctor of the contestant was the author and contriver of the wrong. Upon these affidavits, the surrogate made an order on the 11th of March requiring the contestant to show cause before him on the 29th of March why the decree rejecting the will should not be opened and vacated, and the evidence taken on commission stricken out and ex-

punged, on the ground that it was procured by fraud, perjury and subornation of perjury. Eldridge and his wife seem to have been stunned by the suddenness and magnitude of the attack, which was largely based upon affidavits of Ardies and Wheeler, confessing with shameless effrontery their own perjury and wickedness, and pointing to Eldridge as the active cause, and upon circumstances tending to show that the witness Mason was a myth, and was personified before the commissioner by one Byrnes. A settlement of the controversy over the will followed, apparently arranged by counsel, in which Eldridge took no part, except that of silence, through which the decree rejecting the will was vacated without opposition, the evidence taken on commission stricken from the record, the will admitted to probate, and soon after a provision made for the contestant in excess of the testator's bequest, and to some extent recognizing her equitable claims. This peaceful settlement, however, was soon followed by the presentation of the affidavits and papers used before the surrogate to the General Term, which after notice to Eldridge, and consideration of his answer denying the charges, sent the case to a referee. The latter held, and the majority of the General Term concur, that the charges of perjury and subornation of perjury, and that of imposing a false witness as being Peter Mason upon the commissioner were not established. That conclusion it is not necessary to disturb. But the referee finds, and the General Term concur, that in respect to the deposition of Wheeler, the conduct of the appellant was such as justly to deserve the censure and discipline of the court. The facts in this respect do not depend upon affidavits or evidence of a character open to criticism. They rest mainly upon the admissions of Eldridge himself. Regarding the affidavits presented to the court substantially as a pleading, they nevertheless constituted an accusation which called upon Eldridge for an answer. Upon the admissions of that answer the case against him stands. Wheeler alleges in his affidavits that Eldridge wrote out in detail answers to be given by the witness to the interrogatories and cross-interrogatories of the commission; that when the

deposition was taken Eldridge was personally present and himself read to the commissioner the answers he had prepared, and then left with the witness, written out in full, the answers to the cross-interrogatories, which the latter read from the memorandum to the commissioner. Wheeler further charges that his testimony was both preceded and followed by payments of money by Eldridge, and produces his letters suggesting a destruction of their correspondence, and begging for a return of the memoranda used at the taking of the deposition. Such original memoranda, alleged to be in the handwriting of copyists employed by Eldridge, were attached to Wheeler's affidavit. In his answer Eldridge admits that he furnished the memoranda for the deposition. He does not deny the authenticity of the prepared answers produced by Wheeler. He admits, and to some extent palliates and excuses the payments of money. He does not dispute the corresponden e produced. He does not deny reading the answers for Wheeler to the commissioner in Philadelphia, and leaving those framed for the cross-interrogatories to be read by the witness. His explanations of these things do not satisfy us. The memorandum made by Eldridge and produced by Wheeler of answers to cross-interrogatories is a very long and carefully prepared document. It occupies in print about eighteen compact pages. On comparing it with the deposition read before the surrogate it is found to be absolutely identical. Laying aside, then, all question of the truth or falsity of the answers, discarding every thing dependent upon Wheeler alone as unworthy of credit, the fact yet remains that an attorney of the court, having taken out a commission for the examination of a witness, writes out what, when printed, are twenty-six pages of answers to interrogatories, and eighteen pages of answers to cross-interrogatories, furnishes them to the witness, who has already drawn upon him for serious sums of money, reads a part of the answers to the commissioner, and leaves the rest for the witness to repeat, and so practically puts his own words, his own ideas, his own facts into Wheeler's mouth, and gets them before the surrogate disguised as honest testimony. Such conduct is inexcusable. The coloring sought

to be given it by Eldridge that he merely meant to refresh the memory of the witness is not justified by the facts. He furnished answers, not notes. He controlled and mastered the memory of the witness; not merely refreshed it. The witness did not answer at all. Eldridge answered for him. We get neither the language nor the memory of the witness; we get only that of his teacher. Practically the examination was merely an affidavit drawn by Eldridge and sworn to by Wheeler. In its true character it was not admissible before the surrogate. When, therefore, it was disguised in the shape of testimony and the form of an examination, and so received into the case a fraud was committed on the surrogate, and the author of it was Eldridge. Grant that the answers are not shown to be false, and that Eldridge believed them to be true; yet he corrupts justice at the fountain by dictating the evidence of the witness. Upon the trial of an issue in open court a question merely leading is excluded. The law so carefully guards the independent and unwarped testimony of a witness that it will not permit, even by the form of a question, the suggestion of its answer. Yet here the answers to thirty-three direct interrogatories, and forty-one cross-interrogatories are actually written out by the attorney for the use of the witness, and so imported into the case.

It is intimated on his behalf that he did not go beyond the custom of the bar. He may have thought so, but is most certainly mistaken. If that were true it would only make our duty all the more imperative. While a discreet and prudent attorney may very properly ascertain from witnesses in advance of the trial what they in fact do know, and the extent and limitations of their memory, as a guide to his own examinations, he has no right, legal or moral, to go further. His duty is to extract the facts from the witness, not to pour them into him; to learn what the witness does know, not to teach him what he ought to know. It is impossible, too, in this case, not to feel the force of other admitted facts. The payments of money by Eldridge to Wheeler, if not bribes, approached nervously near to the line. He, himself, repudiating such purpose, seems

fearful of that construction. His anxiety to get back his memoranda, and to have his correspondence destroyed, indicate his own inner consciousness of conduct open to suspicion. It is impossible not to feel sympathy for him in his struggle, and yet our plain duty is to shrink from no conclusion which the purity and integrity of the profession demands.

The order of the General Term should be affirmed.

All concur.

Order affirmed.