---

(120 App. Div. 378)        In re COHN.

(Supreme Court, Appellate Division, First Department. June 21, 1907.)

ATTORNEY AND CLIENT—DISBARMENT—MISAPPROPRIATION OF MONEY.

An attorney was guilty of misconduct, warranting disbarment, where he converted to his own use $1,389.63 intrusted to him by a client for deposit, and did not make final restitution until six years later, and then under stress of impending commitment for contempt, and where he gave false testimony before the referee in the disbarment proceeding.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, § 56.]

Application to disbar Charles Cohn, an attorney. Respondent disbarred.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

PER CURIAM. The referee, to whom it was referred to take proof of the charges against this attorney, has reported upon the facts; and his findings of fact, which are certainly as favorable to the respondent as the evidence would warrant, are as follows: On or about the 16th day of February, 1895, one John J. Foley died intestate, seized of certain real property. He left, him surviving, his widow, Elizabeth Foley, with four infant children. Thereafter the

city of New York instituted condemnation proceedings for the purpose, among other things, of acquiring title to said property. In the summer of the year 1895 said Elizabeth Foley retained the above-named Charles Cohn to represent her in the said condemnation proceedings, and alleges that he agreed to do so for a fee of $50, together with any costs or allowance that might be awarded therein—an allegation which Mr. Cohn emphatically denies. Mr. Cohn thereafter represented the owners of said real property in the proceedings and attended a hearing held in the matter some time in the month of February, 1896. Mrs. Foley had no notice of this hearing, and did not learn anything in regard to the matter until the spring or early summer of 1897, when Mr. Cohn informed her that the commissioners appointed to conduct the proceedings had awarded the sum of $2,083 for the property formerly owned by Mr. Foley. Mrs. Foley subsequently learned that on or about December 17, 1896, the award for the said real property, which, with interest to that date, amounted to $2,280.17, had been deposited with the Knickerbocker Trust Company, subject to withdrawal pursuant to the further order of the court. The necessary proceedings having been taken, and Mrs. Foley duly appointed guardian of her said infant children, an order was duly entered directing the Knickerbocker Trust Company to pay and distribute the moneys deposited with it as aforesaid, together with such interest as had accumulated thereon, aggregating $2,304.53, to Mrs. Foley individually and as such guardian in the following proportions, to wit: The sum of $474.73 to Elizabeth Foley individually, and four sums of $475.45 each, to Elizabeth Foley as guardian of each of her said infant children, respectively. On or about the 14th day of July, 1897, the Knickerbocker Trust Company paid the various amounts as directed by said order, by delivering checks therefor to Mr. Cohn. Thereafter, induced thereto by Mr. Cohn, the said Elizabeth Foley indorsed the said checks in blank and delivered the same to him, upon his agreeing immediately to deposit the same to her credit in the State Trust Company of New York. Mr. Cohn did not deposit all of the said moneys as agreed. He deposited only the sum of $914.90 thereof to the credit of Elizabeth Foley in the State Trust Company, and converted the balance of the said moneys, amounting to the sum of $1,389.63, to his own use. Thereafter Mrs. Foley learned that Mr. Cohn had appropriated said moneys to his own use, and she thereupon engaged counsel, who succeeded in collecting the sum of $885 from Mr. Cohn on account thereof. This sum was collected in installments of about $50 each, and the last payment was made some time in the year 1900. In the course of the negotiations Mr. Cohn informed Mrs. Foley's counsel that he had invested the aforesaid moneys in bond and mortgage in her behalf. This statement was false and untrue. After paying the said sum of $885, Mr. Cohn refused to make further payments and claimed the balance of said moneys in his hands as a fee for his services in the aforesaid condemnation proceedings; and thereafter, in the month of April, 1902, Mrs. Foley not having received any further payments from Mr. Cohn, again retained counsel for the purpose of compelling him to pay the balance still due to her. Thereafter, in a summary proceeding instituted against Mr. Cohn for that

purpose, Mr. Cohn opposed the application for an order directing him to pay Mrs. Foley the balance due to her. The matter was heard before a referee, who reported that the sum of $382.92, together with costs and disbursements amounting to $240, was still due from Mr. Cohn to Mrs. Foley, and an order directing him to pay said sums was thereafter duly entered and served upon him. Thereafter Mr. Cohn paid to Mrs. Foley the sum of $175, in installments of $50 or $25 each, on account of the sum still due to her; but, after paying that amount, he failed to further comply with the terms of the order entered in the said summary proceedings as aforesaid. Thereafter proceedings were instituted for the purpose of punishing Mr. Cohn for his contempt in failing to comply with the terms of the said order, and after he had been declared in contempt of court, and liable to arrest, he paid the balance due to Mrs. Foley some time in the month of July, 1903.

While accepting these conclusions of fact, we find ourselves unable to concur in the opinion expressed by the learned referee that there have been shown to be any such extenuating circumstances as would justify a dismissal of the charges. The main excuse relied upon by the respondent is that when he misappropriated his client's money he was quite young, and had been but six years at the bar. It would be difficult to find in this lack of experience justification for the wrongful acts of the respondent; but if, when the error had been called to his attention, he had acknowledged it and striven promptly to repair his fault, he might have entitled himself to leniency, if not to absolute forgiveness. The record shows, however, that he did nothing of the sort. He made restitution only after extreme pressure had been put upon him, even to the extent of his adjudication of contempt with liability to commitment therefor, and after Mrs. Foley, in order to recover what should have been voluntarily repaid to her, had been obliged to employ attorney after attorney. To those who called upon him in her behalf he made false statements as to his actions with regard to the money, and he finally attempted to justify the retention of a considerable portion of it by claiming a most unreasonable fee for the service he had rendered. He misappropriated the money in July, 1897, and it was not until July, 1903, six years afterwards, that, under stress of an impending commitment for contempt, he made final restitution. During all this time he had been gaining in years and experience, and the plea that might have been accepted in palliation of his original offense had lost its plausibility and potency. To cap the climax of his misdoing, it seems to be clear that he gave false testimony before the referee appointed in this proceeding. He undertook to say that he kept his client's money for the purpose of investing it, so that she could get larger interest than the trust company would allow, and that in point of fact he did so invest it. His story to this effect is quite uncorroborated. He is unable to remember to whom he made loans, or for what sums, except that he does profess to recall a Mr. Williams, to whom he says he loaned $150; but he is quite unable to describe or locate this supposed borrower in any way that would serve to identify him. The respondent has destroyed his checks and check books covering the year that the money remained in his hands; but an examination of his accounts with the trust com-

pany wherein he kept his account seems to indicate that he could not have made the loan he professes to have made. We are able to find in this case nothing but that of an attorney who has misappropriated his client's money, and has for six years vigorously contested every effort to compel him to make restitution.

It follows that the respondent must be disbarred.

(120 App. Div. 260)