(122 App. Div. 527.)

### In re O'SULLIVAN.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

ATTORNEY AND CLIENT—DISBARMENT OF ATTORNEY—GROUNDS.

 An attorney who received from a woman $300, to obtain the release of the woman's husband from prison, agreeing to return $250 of the money if he did not secure a pardon, and thereafter, on failing to obtain the pardon, refused to return the money, and appropriated it to his own use, was guilty of misconduct requiring his disbarment.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 55, 56.]

 Laughlin, J., dissenting.

Proceedings to disbar Michael O'Sullivan, an attorney. Disbarred.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Thomas D. Hewitt, for petitioner.
Edward Lauterbach, for respondent.

INGRAHAM, J. Michael O'Sullivan was admitted to practice as an attorney and counselor at law in July, 1895. Some time after his admission it appears that he was appointed a deputy fire marshal in the city of New York, and in the performance of his duties he made charges against one Adolph Meyer for setting fire to a tenement house in the city of New York. Meyer was subsequently indicted by the grand jury, pleaded guilty, and was sentenced to imprisonment for 20 years. Subsequently the respondent lost his position in the office as fire marshal and was appointed deputy tax commissioner of the city of New York. While deputy tax commissioner, the wife of Meyer applied to the respondent to secure the release of her husband. The respondent went to Sing Sing prison, where Meyer was confined, and had an interview with him. Shortly after this visit to Sing Sing, Meyer's wife again called on the respondent, and said that she had received a letter from her husband telling her to call upon him; that she had $300 which she would be willing to pay if she had any reasonable assurance that her husband could be pardoned. Mrs. Meyer's testimony is that the respondent first suggested to her that she should place $300 in money that she then had in his hands, and that he

would get her a lawyer; that after conversation with her brother-in-law Mrs. Meyer went to the respondent, who said that he could get her husband out; that she then gave him the money, and he gave her the following receipt:

"Received from Mrs. Emily Meyer $300 to be used for legal services in procuring the discharge from State's Prison her husband, Adolph Meyer, $250 to be returned in case said prisoner is not discharged.
      "[Signed]                                        Michael O'Sullivan."

The respondent's account of this interview was that the woman told him that she was willing to pay the $300 if she had any reasonable assurance that this man could be got out on a pardon; that the respondent told her that he was a deputy tax commissioner, and was not practicing law, but that if she decided on paying the money, and made him custodian of the money, he would secure an attorney for her in the matter; that she conferred with somebody and then came back and deposited the $300 with him, when he gave her the foregoing receipt; that it was agreed that he was to engage an attorney and was to pay him a retainer of $50. The respondent also testified: That he did engage an attorney, and paid him $50. This attorney did nothing in the matter of securing a pardon for over a year, when he died. The respondent then tried to get some of the papers from him, but finally gave it up. He then communicated with Mrs. Meyer, and said that he would have to get another attorney, to which she said: "All right." That he then employed another attorney, to whom he paid $25. This other attorney did nothing, and things remained in this situation until the spring of 1905, when the respondent got signatures to a petition for the pardon of Meyer, which petition was presented to the Governor. Subsequently the respondent went to Albany and saw the Governor about it, but the application for a pardon was denied. In September, 1905, Mrs. Meyer commenced an action in the Municipal Court of the City of New York to recover from the respondent $250 which he agreed to repay to her in case no pardon was granted. He interposed a verified answer in that action, in which he alleged that he was an attorney and counselor at law, and that he was employed and acted as an attorney at law in the matter which was then, and for some time past had been, pending, and still was undetermined, and that the defendant had been paid by the plaintiff a sum for such services. Upon the trial of that action the defendant was called and examined as a witness, and testified that in 1903 the plaintiff brought $300 to him and deposited the $300 with him and engaged his services to secure the discharge of Meyer from State's Prison; that the understanding at the time of the deposit was that he was to use $50 of the money for his services and keep it all in case her husband was discharged. Judgment was ordered in the Municipal Court for the plaintiff against the respondent for the sum of $250, from which no appeal was ever perfected; but the plaintiff in that action was unable to collect the judgment. Subsequently these facts were laid before the Bar Association, when this proceeding was instituted. The respondent claims that of this $300 he paid out $75 to these two attorneys, but he does not deny that he appropriated the balance to his own use.

If, as he now claims, he was not retained as an attorney at law, but was a simple custodian of the money, it seems clear that he misappropriated to his own use money that was deposited with him for the specific purpose of procuring the services of an attorney to secure a pardon from the Governor, and that he committed perjury in the Municipal Court action. If he took the $300 from this woman for his services as an attorney to procure a pardon for her husband, agreeing to return to her $250 in case he was not successful, and immediately spent the $250, refused to return the money on demand, and, after it had been decided that he was liable to repay it to her, still refused to pay it, he was guilty of misconduct which requires his disbarment.

It is quite clear that, under the circumstances thus disclosed, the respondent is not a proper person to be a member of the bar. His own testimony shows that he lacks both integrity and truthfulness, and with such a character he should not be continued as a member of the bar.

It follows that the report of the referee should be confirmed, and the respondent disbarred.

PATTERSON, P. J., and CLARKE and HOUGHTON, JJ., concur.

LAUGHLIN, J. (dissenting). The specific charge upon which the disbarment of the respondent is sought is that he converted to his own use the sum of $250, which belonged to a client; but the facts with respect to the receipt and detention of the money and the proceedings on the part of the client to compel repayment are set forth. The learned referee in his report states briefly the facts he deems established by the evidence, and then cites Matter of Charles Cohn, (Sup.) 101 N. Y. Supp. 84, as presenting "a somewhat similar state of facts," and concludes as follows:.

"Believing myself to be controlled by this decision, I have no option but to report as my opinion, upon the facts of this case, that the respondent should be disbarred."

I am of opinion that the two cases are clearly distinguishable on the facts. It clearly appeared not only that Cohn misappropriated his client's money, but that he intentionally concealed the facts from her by misrepresentations nearly six years, and, when his wrongdoing was discovered, he denied it, and claimed the right to retain a considerable part of the money in payment of an exorbitant fee charged to her, and neither made, nor offered to make, restitution, until a commitment for contempt of which he had been adjudged guilty was about to be executed. Moreover, in answer to the disbarment proceedings, Cohn asserted the false claim that he received the money for the purpose of investment, gave false testimony, and destroyed checks and check book, which would have been the best evidence. In the case at bar, there is nothing in the original transaction by which the client delivered the money to O'Sullivan to justify criticism or warrant suspicion of a design on his part to profit by it personally. Mrs. Meyer delivered the money to O'Sullivan on the 17th day of March, 1903,

and he, at the same time, without request or suggestion from her, delivered to her a receipt reciting the substance of the agreement under which he received it, as follows:

"March 17th, 1903.

"Received from Mrs. Emily Meyer three hundred dollars, to be used for legal services in procuring a discharge from State's Prison of her husband, Adolph Meyer; two hundred and fifty dollars to be returned in case said prisoner is not discharged.
"$300.00                                    Michael O'Sullivan."

This proceeding is based upon O'Sullivan's failure to repay the $250. He at that time was a member of the bar, but held the office of deputy tax commissioner, and was not practicing his profession. Prior thereto, and in 1897 he held the office of fire marshal, and as such procured the arrest of the husband of Mrs. Meyer for arson. Meyer pleaded guilty, and the court imposed the maximum period of 20 years' imprisonment. Mrs. Meyer, according to her testimony, some five or six months or a year before paying the money to O'Sullivan, called on him at the instance of her husband, whom he had seen while visiting Sing Sing, and had offered to aid in obtaining a pardon, to sign an application for the pardon of her husband. She testified that he signed the application, and she took it to Attorney Coleman, who asked $300 for his services in presenting it, "lose or gain," and later wrote her that he could not take the case for less than $400; that she could not pay more than $300, and she reported these facts to O'Sullivan, who suggested that she place the $300 in his hands, and that he get a lawyer, and, after consulting with her brother, she and he called on O'Sullivan two days later and "made an agreement with him." Her only testimony, however, with respect to any other agreement, is that O'Sullivan said that he could get her husband out, and suggested that she "give him" the $300 which Coleman at first wanted, and she "paid him the $300" two days later, without anything further being said, and he gave her the receipt which the learned counselor for the petitioner concedes constitutes the agreement upon the violation of which professional conduct is predicated. Mrs. Meyer had many interviews with O'Sullivan concerning the progress that was being made with the application for the pardon of her husband, and finally, after he had informed her of the death of the first attorney employed, to whom, as she knew, he had paid $50, and that he had withdrawn the matter from the hands of another attorney to whom, with her knowledge, he had paid $25, and had taken personal charge of it and had presented the application and a petition, signed by from 30 to 100 people, to Governor Higgins, who had it under consideration, she demanded repayment of the $250, and in 1905 brought an action against him in the Municipal Court for converting it, and obtained judgment on September 25, 1905, for the full amount which he has paid pending this proceeding, after, however, taking an appeal from the judgment.

It was understood at the outset that the respondent was to employ another attorney to help him, and that he was not to take an active part, owing to his connection with the prosecution of Meyer and to his official position. With the approval of his client, he employed one

Cherry, an attorney, to take active charge, and paid $50 of the $300 to him as a retainer during the same month that he received the money from her.   Cherry died about one year thereafter, without having filed an application for a pardon, and the fruits of his labors, if any, could not be found or utilized.   O'Sullivan then, according to his testimony, which stands uncontradicted, with the knowledge and approval of Mrs. Meyer, employed one Curtin, an attorney, and paid him $25 as a retainer.   In the fall of 1904, O'Sullivan was not satisfied with Curtin's progress in the matter, and he prepared an application for the pardon and a petition, and obtained many signatures, but concluded to defer presenting it until the newly elected Governor took office, and early in Governor Higgins' term he had the application and petition filed, and later on went personally to Albany and presented the matter to the Governor and to Pardon Clerk Joyce, and notified his client that it would receive executive attention after the executive action on legislation for the session of 1905 was finished.   Shortly thereafter, and before the application had been acted upon by Gov. Higgins, she demanded repayment of the money and brought the action against him for conversion.

There was evidence before the Municipal Court—which was controverted, however, by the testimony of O'Sullivan—that he undertook to obtain the discharge of Meyer within eight months or to return the money, and this is doubtless the evidence upon which the court adjudged that he had converted the money.   It is not, however, charged in this proceeding that he agreed to obtain the pardon within any particular time, and no evidence tending to show that he did was offered. Moreover, that theory of the case is expressly disclaimed in the points filed by the learned counsel prosecuting the charges.   After the rendition of the judgment in the Municipal Court, and before this proceeding was instituted, the application for pardon was denied, or knowledge of its denial was then first acquired by O'Sullivan.

It appeared by the testimony of O'Sullivan, elicited on cross-examination, that, instead of holding the balance of the $300 intact, he mingled it with his funds and used it for his own purposes.   That would doubtless constitute, even in the circumstances of this case, professional misconduct; but it would not constitute conversion until a demand by the client for a return of the money and refusal to comply therewith.   Moreover, the charge is not that he used it, but that he was guilty of conversion in failing to repay it to his client on demand. There was no demand upon the attorney for a return of the money after the application for a pardon was denied.   The long delay in prosecuting the application for the pardon has not been satisfactorily explained. A proper sense of professional duty should have stirred the attorney to greater activity and diligence in executing the task which he undertook, and his failure in this regard deserves censure.   It is to be borne in mind, however, that he is not charged with fraud in entering into the agreement, evidenced by the receipt, under which he received the money, and that was not rescinded, nor was his employment terminated, before he was sued in conversion.   While the agreement stood unrescinded and without any demand or notice requiring him to perform

the services within a specified time, it is not clear that there could be any liability for conversion of the money, before denial of the application for pardon, excepting, of course, on the theory that he undertook to obtain the pardon within a specified time, as was alleged in the amended complaint in the Municipal Court.

It cannot be said, I think, in view of all the circumstances with respect to the employment of other attorneys, that such a long period of time had elapsed for the performance of the services that as matter of law he was obliged forthwith to return the money on demand. Nor do I understand that the attorney is here concluded by the judgment in the Municipal Court. That judgment could not, in my opinion, be sustained on the evidence presented here, owing to the absence of evidence that the attorney undertook to obtain the pardon within eight months, which is highly improbable and was fairly met by the receipt, which contains no such condition, by the original complaint in the Municipal Court from which it was omitted, and by the fact that her husband had still 16 years to serve, from which it may fairly be inferred that both he and his wife were quite as solicitous about this freedom for the remaining 15 years and 4 months, as for those 8 months. It may also be observed that the client, in her testimony in this proceeding, failed to state, as she did in narrating the conversations in the Municipal Court, that there was a limitation of eight months as the period within which the pardon was to be procured, and, on being specifically interrogated on that point, testified that nothing was said at or before the time the money was paid concerning the time within which the pardon was to be procured. An attorney may only be disbarred upon sufficient formal charges duly proved under the common-law rules of evidence, on a hearing of which he has had due notice, and the court is confined to the charges upon which he has been put upon trial. In re Eldridge, 82 N. Y. 161, 37 Am. Rep. 558; In re An Attorney, 83 N. Y. 164. A disbarment proceeding is penal in its nature, as it may deprive the attorney for life of earning a livelihood in a profession and calling to prepare for which he has spent much time and money, and to which he has been duly admitted (Matter of An Attorney, 1 Hun, 329), and upon that theory it has been held that the particular misconduct charged must be proved beyond a reasonable doubt (In re Mashbir, 44 App. Div. 632, 60 N. Y. Supp. 451); but doubtless that rule should be confined to a charge involving a crime. A judgment in a civil action is no evidence of the facts therein adjudicated against the defendant in a criminal prosecution for the reason that the rule of reasonable doubt does not obtain in civil actions. 1 Freeman on Judgments, 319a; 2 Wharton on Evidence, §§ 776, 777; 2 Black on Judgments, § 529; Riker v. Hooper, 35 Vt. 457, 82 Am. Dec. 646.

The judgment in the Municipal Court was recovered under the rule of preponderance of evidence, which obtains in civil actions even to recover a penalty, or involving criminal acts, with the qualification, as to acts constituting a crime, that, if they be susceptible of an innocent construction, the defendant must be given the benefit of that construction. Kurtz v. Doerr, 86 App. Div. 507, 83 N. Y. Supp. 736, affirmed 180 N. Y. 88, 72 N. E. 926, 105 Am. St. Rep. 716; Serra v. Brooklyn

Heights R. Co., 95 App. Div. 159, 88 N. Y. Supp. 500; Wood v. Wyeth, 106 App. Div. 24, 94 N. Y. Supp. 360. The judgment in the Municipal Court was admissible in this proceeding, for the effect upon the public of its recovery against the attorney is an item to be considered in determining whether he is a fit man to retain a license to practice. McCarthy's Case, 42 Mich. 71, 51 N. W. 963; Fairfield County Bar v. Taylor, 60 Conn. 11, 22 Atl. 441, 13 L. R. A. 767. It is quite clear, however, I think, that it is not conclusive upon the attorney, and that he is at liberty to explain it, and that it is our duty to determine upon all of the evidence presented here whether it has been clearly shown by a fair preponderance of the evidence that he is guilty of the charge of having converted the money. Matter of Darmstadt, 35 App. Div. 285, 55 N. Y. Supp. 22; 4 Cyc. 915.

There are some inconsistencies in the position and claims of the attorney from time to time, and in his testimony; but, as he is not now upon trial for them, they may only be taken into consideration in determining the punishment after his conviction of some charge upon which he is upon trial. I am of opinion that the specific charge of conversion should not be deemed sustained by the evidence, but it does not follow that the proceeding should be dismissed. Although conversion is charged, yet the facts relating to the entire conduct of the respondent with respect to this transaction are set forth, and professional misconduct is charged broadly thereon. There is no evidence of deception or dishonesty on the part of the attorney in his relations with his client; but for failing to preserve her money intact, and to exercise greater diligence in causing the presentation of the application for the pardon, and for failing to return the unused balance of the fund to her promptly upon learning that the application for the pardon had been denied, he should be disciplined by suspending him from practice for the period of six months.