In the Matter of DAVID MARLOW, an Attorney.

Second Department, February 4, 1929.

*Albert Conway*, opposed.

LAZANSKY, P. J. The charges against this respondent are that, during the past eight years, he on many occasions gave valuable consideration to one Selinger and one Danziger, who were not

attorneys and counselors at law, as an inducement for procuring negligence cases to be placed in the hands of the respondent in violation of the laws of the State of New York and of canons 27 and 28 of the Canons of Ethics of the American Bar Association, adopted by the New York State Bar Association on or about January 28, 1909; that the practice of law as conducted by the respondent amounted to the conduct of a business enterprise devoted to securing alleged causes of action in personal injury cases in which the defendants were insured by liability companies; and where the claims for injuries proved upon investigation not to be cases where persons or corporations were insured the cases were dropped, and the respondent's clients in such cases were not regarded by him as being worthy of any sense of professional responsibility; where settlements of cases in which the defendant carried liability insurance could not be forced, the respondent did not try the cases himself but peddled them out among other attorneys, acting more as a broker of litigation than an attorney and counselor at law.

The referee found that the respondent employed Selinger from the early part of 1921 to early in 1927, and Danziger from July, 1923, to January, 1928, at a regular salary, to perform certain specified duties as investigator and as procurer of cases to recover damages for personal injuries suffered by persons not theretofore clients of the respondent; that, in procuring such cases through his agents, the respondent knew that he was violating the provisions of section 274 of the Penal Law of the State of New York and of canons 27 and 28 of the Canons of Ethics of the American Bar Association, duly adopted by the New York State Bar Association on or about January 28, 1909; that in so employing Danziger and Selinger respondent knowingly and intentionally aided, abetted and procured the said Danziger and Selinger to violate section 270 of the Penal Law, as amended by Laws of 1917, chapter 783, the respondent being a principal, as defined in section 2 of the said Penal Law; that the respondent, in effect, conducted an enterprise for the accumulation of negligence cases, in which he did not appear as trial counsel for the plaintiffs, but, for such as came to trial, employed other counsel; that testimony was given by one witness to the general good reputation of the respondent, which stood uncontradicted.

The respondent, who was admitted in 1920 at the age of thirty-three years, claims that he did not engage these men to procure cases for him. The testimony of Selinger and Danziger, the admission of the respondent on the hearing before Mr. Justice FABER, adduced on the hearing before the official referee, and his own testimony at the latter hearing unquestionably show that these men were employed and paid by respondent to " solicit " cases for him, and that he was

engaged in a " business " of procuring cases and not in the practice of the law.

The finding of the referee was fully justified. In light of the testimony of respondent concerning his books and records, the referee might have disregarded the testimony concerning the payment of a salary for the services of those two men and found that they were paid by sharing in the fees. However, that is not so important in view of a more serious situation.

The referee also found, at the instance of the respondent, that he did not reject causes of action and personal injury cases because he ascertained that the defendants were not insured by liability companies; that he did not peddle out cases among other attorneys nor act as a broker of litigation; that there was no testimony that respondent had been guilty of any fraudulent or deceitful conduct toward any of his clients or has not acted fairly and honorably toward his clients.

If nothing further appeared upon this record than those violations of subdivision 2 of section 274 of the Penal Law and breaches of the Canons of Ethics, it might not be necessary to visit upon respondent the extreme penalty for his misconduct. But there is another phase of respondent's practice which requires attention. When asked if he kept any books or records indicating the cases he had, the respondent stated that the only record he had was on the folder of the particular case. He also at one time had a book showing the names of companies that insured the defendants in his cases so that he could group the cases under the heading of the company involved. He said he was rather lax about books and did not keep this book for any length of time. He never had a ledger. He kept his canceled checks and his check stubs for only two or three months. If information had been sought with reference to income tax returns, he would have no records from which it could be obtained; he would have to depend upon his recollection. He says that he never prepared any income tax return because he never made sufficient money. When questioned as to the number of cases he had, he said two cases a month, maybe three. Referring to cases of some financial value but not to small cases that came up in the day's work, but taking cases large and small, he judged from six to eight or maybe as high as ten a month. It might have run a little higher than eight a month. It might have run a hundred cases a year, and if one counted every case that came in in seven years it amounted to seven hundred cases. Of the seven hundred cases, forty per cent had to be prepared for trial or actually came to trial. This was necessarily all mere conjecture. Of this forty per cent he did not try one. He did not try a case in the Supreme Court; he may have

tried a few cases in other courts. If he found that a case was of considerable importance, he retained a counsel who made a specialty of negligence cases. Counsel's fee depended upon the success of the case. The testimony of Selinger and Danziger shows that respondent paid each of them forty dollars a week. He also had another investigator, named Waters. Respondent's claim was that Selinger and Danziger were investigators and servers of process. It is likely that Waters received the same salary. Respondent also employed a stenographer and an office boy. He, of course, had to pay rent and other expense for his office and it appears he used an automobile in connection with the work of the office. With such a force and the expense incident thereto, it is fair to assume that he had quite an extensive "business." Yet, the nature and details of it cannot be disclosed by documentary proof because the respondent either kept no books, or, having kept them, has either hidden or destroyed them. Had books and records been produced, the true situation as to respondent's affairs might have been disclosed to the court. It is difficult to believe the claim that no books, other than a check book, were kept. It is likely that books were kept and that they were destroyed or their existence denied in anticipation of the investigation ordered by this court. But even if the usual books other than the check book were not kept, it indicates an intent to hide conditions just as much as if the books kept had been destroyed, as was the check book. Respondent has not been charged with failure to keep books and records or with destruction of or failure to produce those he probably kept. But either may be taken as a measure of the spirit in which he conducted his practice, and indicates that he violated the law and the Canons of Ethics, not because "ambulance chasing" was something condemned yet continued by members of the bar, but rather because he had no concern or respect for the law and was indifferent to the ideals of his profession; because gain, and gain alone, was his aim through methods to remain hidden if necessary.

Respondent has shown himself to be lacking in the essentials of character and fitness, without which honorable service at the bar is impossible.

The motion to confirm the official referee's report should be granted, the respondent disbarred, and his name ordered stricken from the roll of attorneys.

Present — LAZANSKY, P. J., RICH, YOUNG, KAPPER and HAGARTY, JJ.

Motion to confirm report of official referee granted, respondent disbarred, and his name ordered stricken from the roll of attorneys.