In the Matter of THOMAS J. O'NEILL, an Attorney, Respondent.

First Department, March 10, 1930.

*Isidor J. Kresel* of counsel [*Kenneth M. Spence* and *Sidney Handler* with him on the brief], for the petitioners.

*I. J. Beaudrias* of counsel [*Leonard F. Fish* with him on the brief], for the respondent.

DOWLING, P. J. The respondent was admitted to practice as an attorney and counselor at law by the Appellate Division of the

Supreme Court of the State of New York, First Department, on November 8, 1897.

The original petition herein charged respondent with professional misconduct in the solicitation of retainers by laymen of personal injury cases and the payment of money as salaries, fees and commissions to the "runners " who solicited these cases.

A supplemental petition was filed charging that the respondent, as an inducement to claimants who had sustained personal injuries to sign retainers employing the respondent as their attorney, promised to pay, or cause to be paid, personally and through agents, money for the support of said claimants during the pendency of the action, and the respondent in accordance with said agreement paid, or caused to be paid to said claimants, various sums mentioned in the specifications.

The charges were referred to a referee who has reported in favor of the respondent and a motion is now made to confirm said report and to dismiss the proceeding.

Taking up the charges contained in the supplemental petition, which have to do with champerty and maintenance, they refer to the cases of Cole, Wixon and Hannon. In the Cole case an aggregate of $1,500 was paid to him by respondent, as he claims, entirely after the trial of his case. In the Hannon case, loans were made to him by respondent, as he claims, after the rendition of the verdict, although he then knew that Hannon was a convict. In the Wixon case, respondent admits that he advanced him $150 before the trial and $100 after the trial, to assist in paying expenses due to the confinement of Wixon's wife, although on the trial it was proven that Wixon had defrauded a fraternal order. The learned referee, after carefully weighing the evidence, has refused to credit the testimony of the witnesses against respondent in these three matters. A question of fact was presented in each case, and we are not disposed to disagree with the referee's conclusion in this respect, particularly as the witnesses who came from another State had apparently conferred there with a representative of a railroad company hostile to respondent, and some of them, at least, had an animus, real or fancied, against him. But attention should be called to the fact that respondent was unable to produce any documentary evidence of the times and amounts of his payments to these parties. Had he kept correct and proper books of accounts and preserved them, as well as his receipts for payments made, his defense to these charges would have been more convincing and no room for doubt of his innocence would have been left. But he destroyed his check book and even his copies of his income tax returns and left himself without recourse save to his

own testimony and that of his office associates. The respondent's brief contains this curious statement: " It was totally unnecessary and useless to keep any books of account or books of record, as hereinafter shown; and the sole argument of petitioners' counsel is devoted to the absurd contention that he ought to have kept books and records to demonstrate to the Bar Associations or to the Railroad Companies that he did not maintain clients or pay commissions." The impudence of the second part of this sentence is emphasized by being italicized. It is fair to say this brief is not signed by respondent. Of course no such argument was made by petitioners' counsel. The purpose of keeping proper books of account, vouchers, receipts and checks is to be prepared to make proof of the honesty and fair dealing of attorneys when their actions are called in question, whether in litigation with their clients or in disciplinary proceedings and it is a part of the duty which accompanies the relation of attorney and client. The failure to keep proper books, or the destruction of books, vouchers and checks, is in itself a suspicious circumstance. As has been said by Mr. Presiding Justice LAZANSKY in *Matter of Marlow* (225 App. Div. 252): " * * * With such a force and the expense incident thereto, it is fair to assume that he had quite an expensive ' business.' Yet, the nature and details of it cannot be disclosed by documentary proof because the respondent either kept no books, or, having kept them, has either hidden or destroyed them. Had books and records been produced, the true situation as to respondent's affairs might have been disclosed to the court. It is difficult to believe the claim that no books, other than a check book, were kept. It is likely that books were kept and that they were destroyed or their existence denied in anticipation of the investigation ordered by this court. But even if the usual books other than the check book were not kept, it indicates an intent to hide conditions just as much as if the books kept had been destroyed, as was the check book. Respondent has not been charged with failure to keep books and records or with destruction of or failure to produce those he probably kept. But either may be taken as a measure of the spirit in which he conducted his practice, and indicates that he violated the law and the Canons of Ethics, not because ' ambulance chasing ' was something condemned yet continued by members of the bar, but rather because he had no concern or respect for the law and was indifferent to the ideals of his profession; because gain, and gain alone, was his aim through methods to remain hidden if necessary." But of course, standing alone, the destruction of books and records would not furnish the basis for charges unless it were done to hamper

a judicial investigation or for some other improper motive. It is, however, significant as showing an attorney's general conception of his professional obligations.

This brings us to a consideration of the original charge, which is that of solicitation. Under this head, proof was offered of seventeen specific cases of alleged solicitation by respondent's employees. Respondent, an active and successful practitioner, specializing in negligence litigation, particularly against railroads, maintained two offices, one in White Plains, the other in New York. In the former he employed four investigators, in the latter five, and occasionally two others. All these men were paid salaries and there is no proof that they ever received any part of the fees received by respondent or any commission for securing retainers. Respondent's success has enabled him to discriminate in his acceptance of litigation, and the testimony is that only about one in four of the cases offered to these two offices is accepted.

Of the investigators above enumerated one Peck, in the New York office, who had been in respondent's employment for over fifteen years and was discharged only in August, 1928, was the same person referred to as a solicitor of negligence cases and receiving commissions therefor in *Matter of Shay* (133 App. Div. 547).

A reading of the exceedingly voluminous record herein satisfies us at the outset that the evidence fairly establishes the retainer of respondent by other means than solicitation, in the cases of Miozzi, Burdett, King and Mooney. The issue of fact is close in the following cases; but it cannot be said that the preponderance of the evidence is with petitioners: LaFontaine, Leahy and Nye. Solicitation by respondent's employees has been clearly and overwhelmingly established in the following cases: by Gore — Collins, Segergren; by Gore and Lynch — Schaub; by Sackett — Cole, Wixon, Hannon; by Smith — Kelly; by Toglio (" Jimmie ") — Berno; by Hastings — Moore; by Troy — Strauss. Thus we find ten cases in all in which solicitation by respondent's employees is proved. In none of these cases is there any proof of any payment in the shape of commissions or gratuities to them for the successful outcome of their efforts to obtain retainers for respondent. So far as the record shows, they were all paid wages or salaries, and that was their sole compensation. Five of the employees were concerned with the obtaining of one case each. Gore and Sackett with three. The three cases which Sackett successfully solicited were those in which maintenance and champerty were charged and sworn to. In view of the volume and nature of respondent's business, we do not think he can be charged with implied knowledge of the acts of these men, extending over a period of time ranging from 1920

to 1927. There is no proof of any personal knowledge on his part of such practices. Many of the retainers were signed in his offices, and some after a personal visit by the client to him. His offices appear to have been properly conducted, and the only suspicious thing about the general operation of his business is the destruction of his books, copies of income tax returns, and checks above referred to.

While there is a great mass of testimony offered to establish general solicitation by respondent's employees, we believe the comparatively small number of cases established to our satisfaction does not call for disciplinary action by us, and the proceeding should, therefore, be dismissed.

MERRELL, FINCH, McAVOY and PROSKAUER, JJ., concur.

Proceedings dismissed.