In the Matter of MILTON SHUFER, an Attorney, Respondent. BRONX COUNTY BAR ASSOCIATION, Petitioner.

First Department, January 24, 1961.

*Stanley N. Ohlbaum* and *Morris Lyman* for petitioner.

*Leonard Feldman* for respondent.

*Per Curiam.* This is a disciplinary proceeding instituted against an attorney and counsellor at law, under section 90 of the Judiciary Law. Under an amended petition, hearings were conducted by a Referee appointed by this court. The Referee's report found respondent guilty of the general charges and of misconduct in some 14 matters. In some 16 matters the Referee found that the proof was insufficient to sustain a conclusion of misconduct.

Respondent was charged, in effect, with operating a mass negligence practice based on solicitation for him by insurance brokers and others and the filing of exaggerated claims, supported by falsified bills of particulars and falsified bills for

services by physicians and others. He was also charged with settling infants' claims without first obtaining the approval or the fixing of fees by the court. He was charged too with having promised and provided valuable consideration to persons for retaining him in accident cases and for soliciting cases on his behalf.

Respondent, born in 1919, was admitted to the Bar in this Department November 2, 1942. Except for a brief period in 1950 after his admission to the Bar and until 1954 he did not engage in the practice of law. Instead, he worked as a salesman of advertising gift goods. Sometime in 1954 he made an arrangement with an insurance broker by the name of Harold Zipperman. Under that arrangement he took space, for a modest rental, in Zipperman's street store office. Thereafter, Zipperman referred large numbers of accident cases to him, most of which came from persons whose insurance was being handled by Zipperman. Later he obtained similar systematic referrals of accident cases from other insurance brokers, named Dorfman, Meister and Klein, all located in the 149th Street neighborhood in The Bronx, and some others as well. There were also automobile body repairmen who referred cases to him, particularly one Lutins, doing business as Topps Auto Body & Repair.

From 1954 until 1957 respondent's " operation " prospered greatly. In all, he filed 3,404 statements of retainer in negligence cases involving 3,898 claimants. At his peak he employed three lawyers, four or five stenographers, and one clerk to handle matters for him.

In these years respondent never tried personally a single case. Very few of the cases in his office were tried, and when they were it was done by others. The largest case that he handled was that of one Brennan which resulted in a settlement of $8,000. The bulk of the cases were small and they were settled for small amounts.

Respondent profited personally. His income increased in dramatic strides and his scale of living was proportionately expanded.

The proof establishes beyond peradventure of practical doubt that respondent effected the settlement of the cases reviewed by the Referee by submitting to the interested insurance companies falsified bills of particulars and false bills for services rendered by physicians and others. In most of the cases reviewed the claimant testified that he had not paid the physician and that he had not received the bill; that he had not received the services described in the bills; and, generally, there was only

one professional visit. Moreover, the claimants testified uniformly that they had not sustained all the injuries or all the consequences described in the bills of particulars. In similar fashion other elements of consequential damages, such as loss of earnings and property damage, were grossly exaggerated, and, in some instances, made out of whole cloth. It is not disputed by respondent that the documents filed with the insurance companies in these matters emanated from his office, but he attempted, feebly, to deny that he had personal knowledge of the falsifications contained in them or that he had personally handled the matters, rather than associates in his office.

The proof shows, and respondent does not deny, that he expended very large sums on Christmas gifts and entertainment for many persons, including especially the insurance brokers who had occasion to refer business to him. Illustratively, in his 1956 tax return, respondent reported $3,156.96 for Christmas gifts and $14,269.55 for entertainment. But, more significantly, respondent concededly issued large numbers of checks payable to cash in order to provide himself with cash to make personal and professional expenditures. This explanation is pressed by him despite the fact that on many occasions several of these '' cash '' checks were dated and cashed on the same day. With respect to none of the gifts, entertainment, or cash expenditures does respondent have adequate financial records to sustain their expenditure for either personal or professional purposes.

With respect to the settlement of infants' claims, respondent admits that he did not obtain court orders approving such settlements or fixing his professional fees. He argues that this practice was confined to infants' claims not exceeding $500. He justifies the practice on the ground that the insurance companies permitted it and customarily dispensed with court orders on smaller claims, and that, therefore, he was merely following the usage.

Respondent gave testimony before the Grand Jury and before the Bar Association's Grievance Committee variant from that before the Referee. At all times respondent has denied that there was solicitation or that it was done by prearrangement. He also denies that there was any promise or giving of consideration or other value for the solicitation of cases.

It may be true that in any particular case it might have been difficult to establish that respondent was guilty of solicitation, or that such solicitation involved the giving of a consideration to the solicitor, or that the claim, known to respondent, was exaggerated falsely in order to cheat the insurance company; but when the cases and respondent's practice are viewed in the

large, as they should, the inference is inescapable that respondent was guilty of the charges against him. Respondent, for instance, admitted that Zipperman referred to him approximately 500 cases. No satisfactory explanation is given by respondent as to how that could have come about in the absence of prearrangement. The lavish giving of gifts and the provision of entertainment for Zipperman plus the inadequately explained use of "cash" checks, unsupported by financial records, require the practical conclusion that there was prearranged solicitation for value. Of course, it is not necessary to establish the giving of value in order to find improper solicitation (*Matter of Schacht,* 228 App. Div. 232, 238–239); but the giving of value makes the offense the more intentional and the more reprehensible.

Moreover, the high incidence of false claims in identical pattern with the various insurance companies establishes, too, a system for the making and presentation of false claims. In this connection, it is of little significance that, as respondent argues, there was no direct evidence that he personally presented any particular claim to the insurance company. It suffices that his office was engaged in precisely that kind of "business"; he had the sole responsibility for the general practice of his office. Moreover, it is inconceivable as a practical matter that respondent did not know of the common pattern with which the business was done, the very business that was reaping such huge and unaccustomed profits for respondent.

Because of the seriousness of some of the legal objections made by respondent they merit comment.

Respondent urges that the amended petition was too general in form and failed to supply him with sufficient notice of the charges he had to face. On an intermediate application addressed to the amended petition this court held that the amended petition was sufficiently particular. That, in effect, ordinarily would dispose of the matter. However, it should be observed that the hearings before the Referee extended from June, 1959 until May, 1960. During the course of the hearings, starting at the very beginning, under direction by the Referee, petitioner was required to serve upon respondent lists of the particular client matters concerning which proof would be offered with respect to the charges. In consequence, respondent had considerable advance notice. Also, because of the extended hearings, respondent was quite unrestricted in opportunity at later hearings to supply any proof, explanation, or amplification of any of the issues raised that he might have desired.

Question is raised as to the propriety in introducing insurance company files as records made in the regular course of business. There is no doubt that large portions of such files are admissible under the statute (Civ. Prac. Act, § 374-a). Insofar as such files may have contained matter not qualified for admission under the statute, there was no prejudicial error for the reasons next discussed.

It is true that the common-law rules of evidence are applicable to disciplinary proceedings, with exceptions insignificant insofar as this case is concerned (*Matter of Lynch*, 227 App. Div. 477, 479–480; see, also, *Matter of Kaufmann*, 245 N. Y. 423, 432; *Matter of Eldridge*, 82 N. Y. 161, 166–167; *Matter of Goodman*, 199 N. Y. 143; *Matter of Robinson*, 209 N. Y. 354, 359; 7 C. J. S., Attorney and Client, § 33, subd. a., par. [2]; 5 Am. Jur., Attorneys at Law, §§ 293–294; Ann. 161 A. L. R. 898 *et seq.*, Attorney's Misconduct; semble, contra, *Percy's Case*, 36 N. Y. 651; but, see, *Matter of Eldridge, supra,* distinguishing *Percy's Case*). However, because a disciplinary matter is heard before a legally trained Referee without the use of a layman jury the same strict application to such common-law rules is not critical, albeit eminently desirable. The Referee, in this case a distinguished and especially able former Supreme Court Justice, and later the reviewing court are quite capable of selecting that which is admissible from that which is not and making certain that the proof in support of the charges meets the test of the common-law rules. Of course, it is much the better practice to keep the proceedings confined to evidence which may be properly utilized in determining the charges.

Upon reviewing the proof in this case it is evident that there is ample to sustain the charges, except, perhaps, as to the improper grouping of claims for collective settlement. Indeed, respondent's admissions as to the practice of his office, the inferences inescapably drawn from the huge number of cases referred to his office by a small group of insurance brokers and automobile body repairmen, and his inadequate explanation of how or why this practice grew to its giant proportions are quite sufficient to support the conclusions reached by the Referee and to sustain the charges. Similarly, there was witness testimony establishing the falsity of the bills of particulars and the false bills for services involved in the reviewed cases. Respondent never disputed that the bills of particulars and the bills for services rendered emanated from his office. As a consequence, once the circumstantial effect of the common pattern in the reviewed cases is presented and recognized, there is nothing

that remains in the insurance company files which was not admissible under the common-law rules or under the statute, and yet is necessary to support the conclusions reached by the Referee in his report.

Much is made by respondent of the fact that a motion was made to conform the pleadings to the proof and that such a motion was granted in general *pro forma* terms by the Referee. Respondent is quite correct that there is no authority for such a motion before the Referee. Respondent is also correct that such a motion made in general terms, and granted in general terms, is of little or no effect (6 Carmody-Wait, New York Practice, p. 726, n. 13). However, the record reveals no need for such amendment, in any event, by this court or otherwise.

While there is serious question as to the sufficiency of the proof, applying the common-law rules, on the allegation of improper grouping of claims, in the light of the other proof in the proceeding, the matter is *de minimis*. Insofar as the Referee's report is concerned it is related only to his findings in the Yablonka-Edwards matters. There is no technical charge or specification in this respect in the amended petition.

In summary, respondent viewed his practice of the law "not as a profession but as a business" (*Matter of Glucksman,* 230 App. Div. 185, 190). Unlike that in the *Glucksman* case, this record is not free of evidence of fraud on the part of respondent. On the contrary, the proof establishes that respondent was responsible for wholesale fraudulent practices in the handling of mass small negligence claims (cf. *Matter of Becker,* 229 App. Div. 62, appeal dismissed 255 N. Y. 223). Moreover, by admission, as well as proof, respondent was guilty of grievous misconduct in not obtaining court orders in connection with infants' claims and their settlement (*Matter of Gordon,* 229 App. Div. 88; *Matter of Goldberg,* 227 App. Div. 502). Nor is it without significance that respondent failed to keep or supply sufficient records to establish the alleged expenditures for gifts and entertainment which were claimed as professional expenses, or to account for the inordinate volume of "cash" checks which he issued. The failure to keep adequate financial records has been previously commented upon by the courts as evidence sufficient to discredit unlikely explanations given by a respondent, and also to reveal "the measure of the spirit" in which the profession was being practiced, even in the absence of a charge based thereon (*Matter of O'Neill,* 228 App. Div. 518, 519–520; *Matter of Marlow,* 225 App. Div. 252, 254).

Respondent has demonstrated his unfitness to remain a member of the Bar.

..Accordingly, the Referee's report should be confirmed and the respondent should be disbarred.

BOTEIN, P. J., BREITEL, RABIN, VALENTE and McNALLY, JJ., concur.

Respondent disbarred.